**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Roger A. EURY, Defendant-Appellant.**

**No. 294, Docket 25508.**

United States Court of Appeals
Second Circuit.

Argued May 5, 1959.

Decided July 6, 1959.

Arthur E. Rosenberg, Rochester, N. Y., for defendant-appellant.

John O. Henderson, U. S. Atty., W. D. N. Y., Buffalo, N. Y. (Frederick W. Danforth, Jr., Roderick M. Cunningham, Robert J. Plache, Asst. U. S. Attys., Buffalo, N. Y., of counsel), for plaintiff-appellee.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

After a jury trial in the Western District of New York defendant was found guilty under 18 U.S.C. § 1010 [1] of knowingly uttering and publishing a false Federal Housing Administration down payment certificate for the purpose of obtaining a loan insured by that agency. From a judgment of conviction and from an order denying a motion for a new trial, defendant brings this appeal.

During 1951 defendant operated a plumbing and heating contracting business in the vicinity of Rochester, New York. In the fall of that year defendant's uncle, John Eury, contemplated an addition to the rear of his home in the town of Chili, New York and discussed the matter with defendant on several occasions. They finally agreed that defendant would be the contractor for this improvement, that John Eury would work part time on it, and that they would seek to have it financed by an FHA loan from the Central Trust Company in Rochester, New York in the amount of $2500. The FHA regulations required that a down payment be made of at least 10% of the cost of the project, and, accordingly, the application for the loan stated that John Eury had made a down payment in the amount of $350 to defendant. This information was also contained in an "FHA Title I Cash Down Payment Certificate," certified as "true and correct" by defendant. It is this certification which constitutes the crime of which defendant was convicted. Defendant, who took the stand in his own defense, did not deny signing the certificate or assert that a cash down payment had been made to him by his uncle. However, he did testify that John Eury had built up credits with him of approximately $350 during the course of their previous relationship and that these credits constituted the necessary down payment. John Eury contradicted defendant. He testified that he had not furnished defendant with a $350 down payment as certified in the down payment certificate either in the form of cash or credits. Defendant does not contend that the jury could not properly have believed John Eury instead of him; nor does he contend that the elements of the crime charged were not proven; but he does raise points, each of which he claims entitles him to a new trial.

In his opening statement to the jury the prosecutor stated that the defendant had received the proceeds of the loan, and John Eury so testified. In

[1]. 18 U.S.C. § 1010 reads as follows:

"§ 1010. Federal Housing Administration transactions

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

addition, defendant was cross-examined on this point. John Eury also gave evidence tending to show that the improvement contract between the parties was incompletely performed and that only a small portion of the loan proceeds were expended upon it. He further testified that the estimated cost of the improvement was $1500 rather than $2500, and that defendant had agreed to give him $600 out of the $2500 so that he could pay some "back bills." On the theory that it bore upon the question of defendant's intent all of this evidence was admitted by the district court over defendant's objections. Appellant's first point is that this evidence was irrelevant and incompetent and therefore was erroneously admitted. It is our belief that this claim of error is without merit, and that the district court was correct in its determination that this evidence was relevant as bearing upon the question of defendant's intent to make a false certification. One cannot be convicted under 18 U.S.C. § 1010 for inadvertently making a mistaken certification; on the contrary in order to convict it must be shown that defendant's false statement was knowingly made. We think the trial judge acted properly in admitting the testimony defendant objected to. For it seems quite clear to us that it all tended to demonstrate that the defendant executed his certificate knowing of its falsity. See McDonold v. United States, 5 Cir., 1952, 200 F.2d 502; United States v. Rubenstein, 2 Cir., 1945, 151 F.2d 915, certiorari denied, 1945, 326 U.S. 766, 66 S.Ct. 168, 90 L.Ed. 462. As this testimony was relevant to proving an aspect of the crime charged it was competent to be given to the jury even though it showed conduct on the part of the defendant characterized by him as degrading and criminal. As we have so often held, evidence relevant to the proof of one crime is not incompetent because it discloses the commission of another. United States v. Kiamie, 2 Cir., 1958, 258 F.2d 924, certiorari denied, 1958, 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 230; United States v. Glory Blouse & Sportswear Co.,

2 Cir., 1947, 158 F.2d 880; United States v. Epstein, 2 Cir., 1946, 154 F.2d 806, certiorari denied, 1946, 328 U.S. 858, 66 S.Ct. 1350, 90 L.Ed. 1629; United States v. Rubenstein, supra; United States v. Davis, 2 Cir., 1945, 151 F.2d 140, affirmed, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453, rehearing denied, 1946, 329 U.S. 824, 67 S.Ct. 107, 91 L.Ed. 700; Vause v. United States, 2 Cir., 1931, 53 F.2d 346, certiorari denied, 1931, 284 U.S. 661, 52 S.Ct. 37, 76 L.Ed. 560.

Defendant maintains for his second point that the district court erroneously charged the jury. The only significant factual dispute which arose during the course of the trial was whether a credit of $350 had been accumulated. After instructing the jury that it was not necessary for the down payment to have been paid over in cash and that a credit accumulation would have been sufficient, the court went on to say:

If you are convinced by the testimony that that was the fact and that on December 19, 1951 on the date of this transaction when the down payment certificate was filed with the bank that the defendant had previously accumulated for John Eury a valid and bonafide [sic] credit for funds that were due John Eury from the defendant, and that under that arrangement this credit was to be allocated to this projected improvement, then that would have been properly considered as a cash down payment and would have been compliance with the law and regulation. If that was the fact the down payment certificate would not have been false. That is the disputed question of fact, and it is for the jury to resolve.

It is defendant's contention that though the burden was on the Government to prove that a down payment of $350 was not made, the court by the use of the words "If you are convinced * * *" improperly shifted to defendant the burden of proving that the down payment was in fact made. While we do not ap-

prove the district court's choice of language, we cannot say that the use of that ill-chosen phrase constitutes reversible error. The district court had charged that one of the elements of the crime which had to be proven was that the certificate was false, and immediately after the above-quoted language the court stated:

"The defendant in this case, as in every criminal case is clothed with the presumption of innocence. That remains with him throughout the case until the conclusion and can only be disposed by evidence which establishes guilt beyond a reasonable doubt. There is an accepted way of defining what 'Reasonable doubt' means. Some judges use it. It has been referred to in this case. It means—it goes like this: The proof must be such as to exclude every hypothesis except that of guilt and must point to guilt beyond a moral certainty. That is a definition and personally I think it is too academic. It is the law, but I don't think it aids the jury much, in determining what reasonable doubt is. I think perhaps the best definition of reasonable doubt is the term itself, a doubt that is reasonable. Sometimes I think we are inclined to overexplain. The way I prefer to put it is, all the elements must be established beyond a doubt that appeals to your reason or reasoning powers. I distinguish that doubt from such a doubt that may be based on whim, fancy, or caprice. If after considering the evidence in this case you say to one of the jurors 'How do you feel?' He says, 'I don't think the defendant is guilty.' 'What is your reason?' 'I don't know. I have a hunch. I just feel that way.' That is not a reasonable doubt. The reason I say it is not, he can't point to anything as the basis for his doubt. On the other hand, if you say 'How do you feel about this case?' He says 'I don't think he is guilty.' 'What is your reason for it?' 'My reason for it is the evidence of such and such a person, that didn't sound true to me.' That is a reasonable doubt. You can say 'That is the basis for my doubt.' That is a reasonable doubt. If after considering all the evidence you have a reasonable doubt as to the guilt of this defendant it is your duty to acquit the defendant. If, on the other hand, you believe the proof has established all the elements of this crime beyond a reasonable doubt, it is equally your duty to convict the defendant."

It is our opinion that when the language singled out by defendant is looked at in context it does not have the effect of shifting the burden of proof.

Defendant also argues that the district court committed reversible error by charging that a reasonable doubt was a doubt which a juror could give a reason for entertaining. While we have not approved that definition, and do not do so now, we have consistently held that such an instruction does not constitute reversible error. United States v. Owens, 2 Cir., 1959, 263 F.2d 720; United States v. Klock, 2 Cir., 1954, 210 F.2d 217; United States v. Farina, 2 Cir., 1950, 184 F.2d 18, certiorari denied, 1950, 340 U.S. 875, 71 S.Ct. 121, 95 L.Ed. 636; rehearing denied, 1951, 341 U.S. 928, 71 S.Ct. 795, 95 L.Ed. 1359; United States v. Woods, 2 Cir., 1933, 66 F.2d 262; Marshall v. United States, 2 Cir., 1912, 197 F. 511, certiorari denied, 1912, 226 U.S. 607, 33 S.Ct. 112, 57 L.Ed. 379.

Lastly, we consider defendant's contention that the court below erred in denying his motion for a new trial. That motion was based upon an affidavit stating that one of the jurors had said on the *voir dire* that she had never been involved in any business dealings with any builder, and that there was nothing in her experience which would cause her to be prejudiced against a builder or contractor, yet she, with her husband, had been involved with a contractor, her brother-in-law, and had lost money there-

by. The juror in question deposed that the involvement referred to did not "enter her mind" until she was shown the moving affidavit and that it "in no way influenced her deliberations as a juror." We think that the district court was correct in denying defendant's motion, for the matter referred to in defendant's affidavit is not "so obvious a disqualification or so inherently prejudicial as a matter of law," Cavness v. United States, 9 Cir., 1951, 187 F.2d 719, 722–723, certiorari denied, 1951, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374, as to require the granting of a new trial. We cannot assume that whatever continuing bitterness the juror might have because of her loss would be directed against anyone other than the person with whom she had been involved; or that if directed against others those others would be "contractors" as a class rather than "brothers-in-law" or members of her husband's family.

The conviction below is affirmed.