Ronald **JACKSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 23034.

United States Court of Appeals
Ninth Circuit.

Feb. 19, 1969.

Robert J. Hirsh (argued), and William Messing, Tucson, Ariz., for appellant.

Jo Ann Diamos (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before HAMLEY and BROWNING, Circuit Judges, and THOMPSON, District Judge.*

HAMLEY, Circuit Judge:

Ronald Jackson was convicted by a jury of the offense of receiving, concealing, and facilitating the transportation and concealment of heroin near Nogales, Arizona, on December 29, 1967, in violation of 21 U.S.C. § 174 (1964). He appeals. We affirm.

■ Jackson argues first that the evidence is insufficient to sustain the verdict.

Two of the essential elements of a section 174 offense are that the drugs in question shall have been imported or brought into the United States contrary to law, and that the defendant knew this at the time of his participation in the transaction. There was here no direct evidence tending to establish these elements.

■ Section 174, however, provides that where it is shown that the defendant had knowing possession of the drug, "such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Possession means such dominion and control as to give power of disposal of the drug. Arellanes v. United States, 9 Cir., 302 F.2d 603, 606. Such possession can be joint as well as several and constructive as well as actual. Delgado v. United States, 9 Cir., 327 F.2d 641, 642.

Jackson contends, in effect, that the evidence is insufficient to show that he had actual sole or joint possession, or constructive possession, of the heroin in question.

While the evidence is insufficient to show that Jackson had actual sole possession of the heroin, we think it was sufficient to warrant the jury in finding that he had constructive possession of the drugs at the time in question. We need not decide whether, in the alternative, the evidence entitled the jury to find Jackson and his wife had actual joint possession.

■ The evidence and reasonable inferences therefrom, considered in a light most favorable to the Government (see Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680), warranted the jury in finding as follows: Jackson and his wife entered Mexico the evening of December 28, 1967, after parking their automobile on this side of the border and after registering as narcotic violators pursuant to 18 U.S.C. § 1407 (1964). Upon their return early in the afternoon of the next day, they both underwent strip searches at the border. No contraband was found.

However, customs agents drove Jackson and his wife to a doctor's office for cavity searches. Again no contraband was found. When the searches had been completed, Jackson asked the agents to give him and his wife a ride to the bus depot so they could catch a bus back to their home in Phoenix, Arizona. About three blocks before reaching the bus depot, Jackson had the agents let them out of the car. They alighted, but instead of taking a bus, they got into their car, which was parked nearby, and drove away.

Customs agent Dennis saw the Jacksons get into their car, make a U-turn, and drive north on Grand Avenue. He followed them for several blocks and then turned off at the main road. The Jacksons were then free of surveillance for ten or fifteen minutes until customs agents Rollin B. Klink and Richard Swindler saw the Jackson car being driven north. They followed the car as it turned east onto the Patagonia

---

* The Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

Highway, a roundabout route to Phoenix. At approximately milepost 2.5 on the Patagonia Highway, Swindler turned on his siren and red light in order to stop the Jackson car. Jackson's car appeared to speed up and Mrs. Jackson was seen to bend over and an arm was seen to come out on her side of the car and a silver colored package dropped.

Swindler immediately stopped, let Klink out of the car, and sped after Jackson, who stopped only after Swindler pulled in front of him and forced him to the side of the road, three or four hundred yards from the point where the siren and red light had been turned on. Klink, meanwhile, retrieved the silver colored package that had been thrown out of the car. It contained the heroin in question.

Needless to say, the Jacksons' testimony presented an entirely different version of the events described above.

The way in which Jackson handled the car after the agents turned on the siren and red light, Jackson's attempt to mislead the agents into believing that the Jacksons would return to Phoenix by bus, and his choice of a roundabout way to return to Phoenix, entitled the jury to believe that Jackson at all times knew there were narcotics in the Jackson car. Since he was an owner and driver of the car in which, to his knowledge, the narcotics were located before Mrs. Jackson threw them out the window, since he was the husband of the woman who had actual possession of the drugs in his immediate presence, and since he obviously cooperated with his wife in her attempt to dispose of them, the jury could reasonably find that he had such dominion and control over the heroin as to give him power to dispose of it. In Bettis v. United States, 9 Cir., 408 F.2d 563, decided January 30, 1969, we upheld a finding of constructive possession by Bettis on much less of a showing.

We therefore conclude that the jury could reasonably find that Jackson had constructive possession of the heroin. It follows that the evidence was suf-ficient to support the jury verdict, and we so hold.

■ Jackson's remaining argument relates to a juror, Egbert G. Handy, whose presence on the jury was allegedly prejudicial to Jackson. During the impaneling of the jury, juryman Handy made no response to a question by the trial judge as to whether any member of the panel was acquainted with either of the Jacksons. At that time, Handy apparently did not recognize the name of Ronald Jackson and recognized Jackson personally only to the extent that Jackson was a person that Handy "may or may not have seen at one time or another at some place."

During the course of the trial Handy came to feel that he may have met Jackson previously, probably in connection with Handy's work at Valley National Bank. However, Handy did not then advise either the judge or the attorneys of his belated recognition of Jackson. As it turned out, Handy had opened up an account for Jackson in the Valley National Bank in October, 1965, two years and five months prior to the trial.

The problem of Handy's acquaintance with Jackson was examined in proceedings on a motion for a new trial. The testimony of Handy was received and the district court made a thorough inquiry into the matter. The court found, on what we regard as sufficient evidence, that there was no intentional concealment by Handy, that the latter's verdict and vote in the case were not influenced or affected at all by the fact that Handy had had this prior contact with Jackson, and that Jackson suffered no prejudice.

■ A defendant is entitled to be tried by an unprejudiced and legally qualified jury. United States v. Napoleone, 3 Cir., 349 F.2d 350, 353. A defendant is entitled to exercise challenges for cause and, under Rule 24(b), Federal Rules of Criminal Procedure, he may exercise a specified number of peremptory challenges, excusing prospective jurors for any reason the defendant

deems sufficient. In aid of these rights, Rule 24(a) provides for voir dire examination of prospective jurors. It is self-evident that for such voir dire examination to serve these purposes, the answers given by prospective jurors must be truthful and complete.

 Nevertheless, where it is discovered, after a trial, that an answer given by a prospective juror was incorrect because of an oversight or failure to understand the question, and no reasonable possibility of prejudice is shown, the question of whether a new trial should be granted rests within the sound discretion of the district court. See United States v. Woods, 3 Cir., 364 F.2d 481, 483; United States v. Eury, 2 Cir., 268 F.2d 517, 521–522.

Under the circumstances stated above we do not believe the trial court abused its discretion in denying the motion for a new trial, made on the ground that Handy had erroneously indicated, during his impaneling, that he had no acquaintance with Jackson.

Affirmed.