**UNITED STATES of America, Appellee,**

**v.**

**Dennis W. MULLIGAN,**
**Defendant-Appellant.**

**No. 585, Docket 77–1422.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1978.

Decided April 3, 1978.

Michael Young, New York City (Goldberger, Feldman & Dubin, New York City), for appellant.

Ira H. Block, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Audrey Strauss, Robert J. Jossen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before FRIENDLY and VAN GRAAF-EILAND, Circuit Judges, and DOOLING,* District Judge.

VAN GRAAFEILAND, Circuit Judge:

After appellant's first trial ended with the jury deadlocked on all counts, he was retried on a four count indictment[1] before Judge Owen in the United States District Court for the Southern District of New York. At the close of the second trial, appellant was convicted on one count of making a false declaration under oath to a grand jury in violation of 18 U.S.C. § 1623. The jury failed to reach a verdict on another false declaration count and on the remaining counts of bank robbery and conspiracy to commit bank robbery. Appellant advances several arguments for reversal, the most serious of which concerns the asserted partiality of a juror.

Appellant, a former New York City policeman, and his co-defendant, John Cerasani, were charged with the 1971 robbery of a branch of the First National City Bank in New York City. The Government's proof on this issue consisted largely of the testimony of two witnesses, Frank Smith and Martin Shannon, who had admitted their own participation in the robbery and hoped to receive lenient treatment in return for their testimony. In 1976, appellant was called before a grand jury that was investigating the robbery. He was informed that he was a target of the investigation and was advised of his constitutional rights. His conviction for perjury was based on his subsequent testimony that he did not recognize Cerasani's name or photograph.

A few days after the trial which resulted in appellant's conviction, Judge Owen received a letter from one of the jurors stating that the verdict on the perjury count had been reached by compromise. According to the writer, he and several other jurors had not been convinced of the appellant's guilt but had voted to convict on the seemingly unimportant perjury count in the hope of obtaining a unanimous acquittal on the remaining counts.

Shortly thereafter, the Assistant U. S. Attorney who tried the case received a long and effusive letter from another juror. In this letter, the juror expressed her thrill at having participated in the trial, her admiration for both the prosecutor and the judge, her restored faith in the judicial system and her satisfaction with the verdict of conviction. She also disclosed that she had begun to write a book which would be a fictional portrayal of the witness Smith, and she asked for assistance in obtaining transcripts of Smith's testimony at prior trials. After counsel for appellant were given a copy of the letter, they decided to delve more deeply into the background of its author.

They discovered that in 1973 she had a dispute with a United States Postal Service employee. Angered because postal trucks were being parked near her apartment with their motors running, she went to the post office to complain. On the way, she got into an argument with the employee and struck him, inflicting a minor laceration with a ball-point pen which she had in her hand. She was arrested by the New York City Police and charged with felonious assault, after which she was fingerprinted and held overnight for arraignment on the following day. The criminal charges were subsequently dropped, but the postal employee brought a civil suit against her and recovered compensation for his injury.

Because the juror denied on her voir dire that she had had any disputes with the United States or that she had "ever been involved in a criminal case," appellant argued that he was entitled to a new trial. He contended that the juror had perjured herself during voir dire and that, as a result of the undisclosed incident, she must have become biased against New York City policemen. He also contended that her somewhat unusual letter showed that she had

---

* Honorable John F. Dooling, Senior District Judge of the United States District Court for the Eastern District of New York sitting by designation.

1. The indictment contained seven counts, but three of them were redacted prior to trial.

mental and emotional problems which prevented her from performing her duty as a juror. In view of the closeness of the case which assertedly had resulted in a "compromise verdict", appellant submitted that Judge Owen was required to set the verdict aside.

Before ruling on appellant's motion, Judge Owen called the challenged juror to the courthouse for questioning. He permitted counsel to be present and to suggest questions, but he did the interrogating. He asked the juror why she had denied on voir dire that she had been involved in a prior criminal case. She responded that after the charges were dropped, her lawyer told her that she could honestly say that she had not been involved in a criminal case. She said that she specifically asked her lawyer "What about if they ask me if I was ever arrested?" The lawyer reportedly responded, "You say no, because technically you were not." Indeed, she claimed to have asked her lawyer "How will this effect me if I am called for jury duty?" The lawyer reportedly assured her that it would have no effect.

Judge Owen then asked her whether she had had any view on the merits of the case before it began or whether she had harbored any feelings against any party. She replied in the negative. The following dialogue ensued:

Q: Was there any reservation in your mind about wanting to get on to this jury so that you could get back at the Police Department or any member of it?

A: Oh, no, sir. I had no grudge with the Police Department. I was treated very well, quite frankly. It was an experience that I otherwise—I thought, I don't want to go to jail again, but it was an experience. . . .

Q: Did that experience in any way leave any mark on you that affected the impartiality that you brought to the case starting in the beginning?

A: Oh, no, sir. That—that's been so many years ago and I have no grudge against the Police Department whatsoever.

At the conclusion of his interrogation, Judge Owen denied appellant's motion for a new trial. He found that the juror's responses on voir dire were not false but were based on the good faith belief that she was entitled to treat the prior criminal case as a nullity. He further found that she did not conceal any animus against any party to the case in order to get on the jury.

Appellant's counsel was not satisfied. After speaking with the juror's lawyer, he persuaded Judge Owen to call the lawyer for questioning. The lawyer stated, in response to Judge Owen's inquiries, that he had represented the juror in the 1973 proceedings and that after the charges against her were dropped, he helped get her fingerprints back from the police department. Although he was unable to recall the specific advice he gave her on the subject of her arrest, he admitted that the conversation which she described "certainly could have taken place."

■ Following this testimony, Judge Owen again denied appellant's motion to set aside the verdict, reiterating his belief in the juror's good faith. Appellant now asserts that this was error. We disagree.

A defendant is entitled to be tried by a fair and impartial jury, *United States v. Rattenni*, 480 F.2d 195, 198 (2d Cir. 1973), and to exercise knowledgeable challenges in the pursuit of this judicial ideal. *Jackson v. United States*, 408 F.2d 306, 308–09 (9th Cir. 1969). It does not follow, however, that every incorrect answer given on voir dire calls inexorably for a new trial; the question of bias and resultant prejudice remains to be determined. *Id.* at 309; *see also United States v. Robbins*, 500 F.2d 650 (5th Cir. 1974); *United States v. Sockel*, 478 F.2d 1134, 1136–37 (8th Cir. 1973); *United States v. Woods*, 364 F.2d 481, 483 (3d Cir.), *cert. denied*, 385 U.S. 972, 87 S.Ct. 511, 17 L.Ed.2d 486 (1966); *United States v. Eury*, 268 F.2d 517, 521–22 (2d Cir. 1959). If the answer was given in good faith with no deliberate intent to mislead, the trial court may well find that no prejudice resulted, even though the lack of disclosure might

have impaired defendant's right to exercise a knowledgeable peremptory challenge. *Williams v. United States,* 418 F.2d 372, 376–77 (10th Cir. 1969); *Jackson,* 408 F.2d at 308–09; *Ryan v. United States,* 89 U.S. App.D.C. 328, 191 F.2d 779, 782 (1951), *cert. denied,* 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952).

Judge Owen found that the juror's failure to disclose her prior arrest resulted from her good faith belief that she was not required to do so. This finding of fact was based upon his assessment of her demeanor, and it should not be set aside unless clearly erroneous. See *Boscarino v. Nelson,* 518 F.2d 879, 882 (7th Cir. 1975). Although the question of juror impartiality is a mixed question of law and fact, the trial court's findings of impartiality will be set aside only where "manifest" prejudice to the defendant has been shown. *Mikus v. United States,* 433 F.2d 719, 723 (2d Cir. 1970). We agree with the district judge that there was no such showing in this case. The juror's brief brush with the law, arising out of a dispute with a government employee some four years before trial, could not be expected to prejudice her against a defendant similarly at odds with the forces of government. Indeed, as Judge Owen pointed out, the expectation would be to the contrary. There is nothing in the history of this event to indicate that the juror was prejudiced against policemen as a class. See *Eury,* 268 F.2d at 522.

■ Appellant's contention that the juror was disqualified from sitting because of mental and emotional instability is not persuasive. Her somewhat discursive letter falls far short of establishing such lack of qualifications. See *United States v. Dioguardi,* 492 F.2d 70, 78–79 (2d Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 49, 42 L.Ed.2d 53 (1974). Her expressed intention of writing a work of fiction shows neither mental instability nor a predisposition to convict. The outcome of any trial which might be included in her work of fiction could be whatever she willed it to be.

■ Needless to say, the letters which indicated that the jurors on their own might have reached a compromise verdict did not warrant the granting of a new trial. *United States v. Green,* 523 F.2d 229, 235–36 (2d Cir. 1975), *cert. denied,* 423 U.S. 1074, 96 S.Ct. 858, 4 L.Ed.2d 84 (1976); *United States v. Grieco,* 261 F.2d 414 (2d Cir. 1958), *cert. denied,* 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959).

■ Appellant presses two other claims which merit but brief discussion. At trial, the Government introduced only a portion of the grand jury minutes—the initial warning to appellant that he was a target of the grand jury's investigation and had certain constitutional rights, and the particular statements alleged to be perjurious. Appellant objected and asked that his entire testimony before the grand jury be introduced.

We have said that "the prosecution is not required to offer the defendant's entire grand jury testimony so long as 'the statements admitted are given sufficiently in their context so as not to confuse the trier.'" *United States v. Capaldo,* 402 F.2d 821, 824 (2d Cir. 1968), *cert. denied,* 394 U.S. 989, 89 S.Ct. 1476, 22 L.Ed.2d 764 (1969) (quoting *United States v. Rosenblum,* 339 F.2d 473, 475 (2d Cir. 1964)). Whether appellant's denial of recognition was true or false was a simple, clear-cut question. We are satisfied that the Government introduced all of his testimony that "tend[ed] to explain and shed light on the meaning" of the statements at issue. McCormick, *Evidence* § 56 at 131 (2d ed. 1972). *See United States v. Dennis,* 183 F.2d 201, 229–30 (2d Cir. 1950), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); 7 Wigmore, *Evidence* § 2113 at 523 (3d ed. 1940). Judge Owen offered to consider the relevance and admissibility of further portions of appellant's testimony, but appellant's counsel declined the opportunity to suggest this additional testimony, demanding all or nothing. We believe that appellant's entire testimony was "not essential to a fair and impartial understanding of the statements read." *Capaldo,* 402 F.2d at 824. Accordingly, it was within the discretion of the trial judge to exclude it. *Id.*

Appellant also urges that the district court erroneously withdrew some of the required elements of the perjury count from the jury's consideration. The trial judge correctly instructed the jury that the Government had to establish the following four elements:

1. That Mr. Mulligan took an oath to testify truthfully before a United States grand jury in the Southern District;

2. That he made false statements as to matters about which he testified under oath as are charged in the indictment;

3. That those false statements were wilfully made in that at the time he made them he knew them to be false;

4. As to the matters which it is charged he made false statements, those matters were material to the issues under inquiry by that grand jury.

The Judge then stated:

In this case, as the evidence shows, and there is no serious dispute, Mr. Mulligan did appear before a grand jury for the Southern District of New York and took an oath that he would testify truthfully and that such grand jury was authorized by law to administer oaths.

. . . I charge you as a matter of law that the matters as to which Mr. Mulligan was asked as set forth in the indictment were material to the issues under inquiry before the grand jury before which the testimony was given. Therefore, you need not concern yourself with either the first or the fourth elements with which I have just outlined for you. You should direct your attention to the second and the third elements. . . .

Appellant's counsel argues that the trial court erred in removing elements 1 and 4 from the jury's consideration. This contention is meritless. It was not error to withdraw the materiality issue from the jury because materiality is a question of law. *United States v. McFarland,* 371 F.2d 701, 703 n.3 (2d Cir. 1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1689, 18 L.Ed.2d 624 (1967).

The Government contends that the district judge did not withdraw the first element from the jury but merely commented that there was no serious dispute over whether appellant appeared before the grand jury and took an oath to testify honestly. In support of this argument, it points to the following comments of defense counsel in his closing:

Dennis Mulligan testified in the grand jury. Do you know you have a right to refuse to testify in the grand jury? You have an absolute right to say no, I am not going to testify unless you grant me immunity. He had nothing to hide. He raised his right hand and told the truth and testified.

We need not resolve this dispute. Defense counsel never objected to this portion of the charge, and we decline to exercise our discretion to notice the asserted error. *Compare United States v. Pravato,* 505 F.2d 703, 705 (2d Cir. 1974), with *United States v. Howard,* 506 F.2d 1131, 1134 (2d Cir. 1974).

The judgment of conviction is affirmed.