GOVERNMENT OF the VIRGIN ISLANDS, Plaintiff,

v.

Brett A. CLARK, Defendant.

Cr. No. 91/07.

District Court, Virgin Islands, D. St. Croix.

April 29, 1991.

Office of the U.S. Atty. by Terry M. Halpern, U.S. Atty., and Wanda Keyes Robinson, Asst. U.S. Atty., Christiansted, St. Croix, U.S. Virgin Islands, for plaintiff.

Maurice Cusick, Law Offices of Mark E. Davis, P.C., Christiansted, St. Croix, U.S. Virgin Islands, for defendant.

## OPINION

BROTMAN, Acting Chief Judge,
District Court of the Virgin Islands:

Presently before the court is the government's request for review of the magistrate judge's April 22, 1991 order releasing the defendant prior to sentencing on two counts of aggravated rape and one count of unlawful sexual contact. This court conducted a de novo hearing on April 25, reserved decision and stayed imposition of the release order until a decision was reached. The court has decided it will deny defendant's request for presentence release.

## I. FACTS AND PROCEDURE

After a jury trial in this court, the defendant was found guilty on March 6, 1991 of two counts of aggravated rape, 14 V.I.C. § 1700, and one count of unlawful sexual contact, 14 V.I.C. § 1708, with two six-year old girls. Prior to trial the defendant had been on a $50,000 secured bail with numerous pretrial release conditions. Immediately after the jury delivered the verdict, the government moved for detention pursuant to 18 U.S.C. § 3143 and requested that the defendant be detained immediately. The trial judge granted the government's request, revoked defendant's bail status and detained the defendant pending sentencing.

On March 15, defendant filed a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, which motion was renewed on March 27. As grounds for relief, defendant alleges juror bias. After conducting a hearing on March 27 with the juror, the defendant and a witness for the defendant, the trial judge ordered argument on the posttrial motion to be heard on June 13, with sentencing to take place immediately if the motion were denied and a new trial to commence June 17 if it were granted. On April 16, defendant moved for release from custody pending sentencing. The magistrate judge conducted an evidentiary hearing on April 19 and issued an order on April 22 releasing the defendant to the custody of his employer with certain enumerated conditions. The magistrate judge also stayed imposition of the order until April 25, pending appeal to Acting Chief Judge Stanley S. Brotman.

The government filed its request for review of the release order on April 23 and defendant's opposition was received on April 24. This court promptly scheduled an evidentiary hearing for April 25 at noon.

## II. DISCUSSION

### A. *Standard of Review:*

■ As a threshold matter, this court must sort out the procedural posture of this case to determine what level of review is appropriate at this stage of the proceedings. Although the case was prosecuted under Virgin Islands law, there is nothing in the territorial code on the subject of presentence release of a defendant. *Compare* 5 V.I.C. § 3504a (pretrial release). Therefore, we look to the prescribed rules of the United States Code for the proper guidance.

Under 18 U.S.C. § 3141(b), a judicial officer of a court of original jurisdiction over an offense, *e.g.*, a United States magistrate judge, has the power to "order that, pending imposition or execution of sentence ... a person be released or detained under this chapter." Pursuant to 18 U.S.C. § 3145(a), "[i]f a person is ordered released by a magistrate ... the attorney for the Government may file with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release.... The motion shall be determined promptly."

The statute is silent as to what deference the reviewing court should give to a judicial officer's finding in favor of release. Several courts, including the Third Circuit, have found that the district court reviews a magistrate judge's order of release on a de novo basis. *See United States v. Perry*, 788 F.2d 100, 107 (3d Cir.1986); *United States v. Smith*, 87 F.R.D. 693, 699 (E.D. Cal.1980), *aff'd*, 734 F.2d 22, *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 142. This court must make an "independent determination" of the release issue and make a decision "based on the factors deemed important by Congress...." *United*

*States v. Delker,* 757 F.2d 1390, 1398 (3d Cir.1985).

### B. *Standard for Presentence Detention:*

■ Title 18 U.S.C. § 3143(a) governs the court's decision to detain or release a defendant pending sentence. The applicable subsection is § 3143(a)(2), which states that a person who has been found guilty of an offense of a crime of violence and is awaiting imposition of sentence *"shall ...* be detained unless ... the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted ... *and* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." (Emphasis added.) The presumption is in favor of detention, and it is the defendant's burden to prove by clear and convincing evidence that he is not likely to flee or pose a danger to the community. *United States v. Strong,* 775 F.2d 504, 508 (3d Cir.1985).

■ In determining likelihood of flight and safety to the community, the court must consider the following factors enumerated at 18 U.S.C. § 3142(g):

1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence;

2. the weight of the evidence against the person;

3. the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; also, whether at the time of the current offense, the defendant was on probation, on parole, or on other release pending trial or sentencing; and

4. the nature and seriousness of the danger to any person or the community

that would be posed by the person's release.

The evidence presented by the defendant on these factors must be clear and convincing in order for this court to find that he is unlikely to flee or pose a danger to the community.

■ 1. *Motion for a New Trial:* The court must find a substantial likelihood that a motion for a new trial will be granted in order to release the defendant before sentence. In his written order, the magistrate judge highlighted the fact that, since the Government has not yet filed its opposition to defendant's motion for a new trial, it considered the motion "viable." Order of April 22 at 2. The magistrate judge also noted that the trial judge indicated that the motion "was being seriously considered." Otherwise, there was no discussion in the order and no explicit conclusion of a substantial likelihood that defendant's motion for a new trial will be granted.[1]

The clerk's file indicates that defendant's March 15 motion for a new trial is based on "error in allowing an incompetent witness to testify and that the verdicts are not supported by the evidence." A second motion for a new trial was filed on March 27, stating that a juror, Adam Hoover, "failed to respond to the prejudice of Defendant, [to] a material question on *voir dire* pertaining to his knowledge of or relationship to the Defendant." Neither motion was accompanied by a memorandum of law, nor has the government filed its opposing brief, though it has represented that it will oppose it vigorously.

According to Rule 33, Fed.R.Crim.Pro., "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." "The court has discretion in passing on the motion, but it should hold in mind the harmless error provisions of Rule 52,[2] and refuse to grant a new trial if the substantial rights of the defendant were not affected."

---

1. The court notes, however, that the magistrate judge did not have the benefit of the transcript from the March 27 hearing on alleged juror bias.

2. Rule 52(a), Fed.R.Crim.Pro., states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

Wright & Miller, *Federal Practice and Procedure, Criminal 2d,* § 551 at 237–38.

"On an application of this kind assailing the integrity of a jury verdict on the grounds of alleged prejudice of a juror, the burden of proof rests upon the moving party to establish the charge made by a preponderance of the credible evidence. The jury verdict has presumptive validity and it should not be set aside except upon a showing of essential unfairness of constitutional dimension." *United States v. Provenzano,* 240 F.Supp. 393, 408 (D.N.J.1965), *aff'd,* 353 F.2d 1011 (3d Cir.), *cert. denied,* 384 U.S. 905, 86 S.Ct. 1340, 16 L.Ed.2d 358 (citations omitted).

■ A defendant has a right to be tried by an unprejudiced and legally qualified jury. *United States v. Napoleone,* 349 F.2d 350, 353 (3d Cir.1965). In order to secure that right, a defendant is entitled to exercise challenges for cause as well as a specified number of Rule 24(b) peremptory challenges for any reason the defendant deems sufficient. Voir dire examination serves the purpose of protecting these rights, and the answers given by prospective jurors, therefore, must be truthful and complete. *Jackson v. United States,* 408 F.2d 306, 308–09 (9th Cir.1969).

■ Whether the trial judge will grant a motion for a new trial in this case cannot be known at this time; briefs and oral argument, which is scheduled for June 13, are still to be considered before such a decision is made. However, for the limited purpose of determining defendant's motion for presentence release, this court need only decide if defendant has shown there is a substantial likelihood the motion will be granted. To that end, the court has reviewed a transcript of the March 27 hearing in which both counsel and the court questioned the allegedly biased juror, the defendant and a witness for the defendant. The court also has had the benefit of oral argument on this question.

The factual basis for defendant's allegations of juror bias was prompted by the juror himself, who contacted the trial judge when he realized, *after* the jury delivered its verdict, that he knew the defendant as a tenant in the Questa Verde apartments some nine years ago. At that time, approximately between 1982 and 1984, Mr. Hoover was managing the property. Sometime in 1982, Mr. Hoover had a short-lived sexual relationship with an Anne Hays, who simultaneously was involved in a relationship with the defendant. Ms. Hays broke off her relationship with Mr. Hoover after a period of two to three months and remained exclusively involved with defendant. Since that time, Ms. Hays has had no social contact with Mr. Hoover and has seen him only once on the street about a year ago. Transcript at 22.

Mr. Hoover has testified that, at the time the jury was impaneled, he did not recognize the defendant as someone he knew. Transcript at 16. Sometime during the trial Mr. Hoover experienced a vague recollection of knowing the defendant "in some context. But because I could not ask anyone about it, I couldn't verify it. And it just would not come to my mind what the context was that I knew Mr. Clark."[3] Transcript at 2. The morning after the trial was completed, Mr. Hoover remembered that the defendant may have been a tenant at Questa Verde when he was manager of the property. He then immediately contacted the trial judge to disclose this recollection in light of the voir dire question about whether he knew the defendant. Transcript at 16. According to Mr. Hoover, the day after speaking to the trial judge, "my mind began to unravel my familiarity with Brett Clark ..." and that Mr. Clark "was a friend of a girl I knew at the time." Transcript at 6–7. "[A]fter that ... I remembered that Brett had become involved then with Anne Hays. And I had known Anne for a few months before that." Transcript at 8.

Mr. Hoover stated repeatedly that he did not recall the specific relationship with Mr. Clark until after the verdict was delivered.

---

3. Mr. Hoover later stated: "I couldn't pinpoint what that relationship [with Mr. Clark] was during the course of the trial. I just had some inkling in my mind that I knew Brett from someplace, and I just didn't know where it was or why." Transcript at 9.

He also stated that he believed his relationship with Mr. Clark did not in any way play any part in the mental process by which he came to a decision in the case, Transcript at 2, and that his vague recollection during trial did not play any part in the verdict process or in the manner by which he came to a guilty verdict. Transcript at 3. Mr. Hoover denied being in love with Ms. Hays and stated there were "absolutely" no hard feelings after the breakup with her. Transcript at 10.

Ms. Hays testified at the same hearing that her relationship with Mr. Hoover lasted two or three months and that it was "intimate" and "deep." Transcript at 19, 24. Mr. Hoover's apartment had a view of the parking lot and walkway to Mr. Clark's apartment, so when Ms. Hays began seeing Mr. Clark, it became "uncomfortable." Transcript at 20. She believed Mr. Hoover was "upset" when she broke off the relationship but "not overtly." Transcript at 20. Her three-year relationship with Mr. Clark broke off in February of 1985. Transcript at 24. She added that "personally, I feel there is no way Adam could be impartial in his place in the court." Transcript at 25.

Mr. Clark testified at the same hearing that he did not know who Adam Hoover was during jury selection and up to the verdict and did not recognize his name on the list of jurors. Transcript at 29. As a tenant at Questa Verde, Mr. Clark did not have a regular relationship with Mr. Hoover because his roommate paid all the bills and he worked shift work at Hess Oil. Transcript at 30. Mr. Clark said there was no confrontation with Mr. Hoover at the time Ms. Hays broke up with Mr. Hoover, although a month or two later he received a notice of eviction stating that three-person occupancy of a two-person apartment was a violation of the rules. Transcript at 32. Mr. Clark and Ms. Hayes subsequently moved out of Questa Verde.

Based on the foregoing testimony, the court finds that the defendant has failed to show a substantial likelihood that a motion for new trial would be granted based on juror prejudice. Mr. Hoover testified un-equivocally that he did not recognize the defendant during voir dire and had only a vague and unsubstantiated recollection during trial. It was not until after the verdict was delivered that Mr. Hoover recalled the specific relationship he had with Mr. Clark. Under direct questioning from the court, defense counsel and the prosecutor, Mr. Hoover did not waiver in his belief that his relationship with the defendant did not play any part in his weighing of the evidence. Furthermore, the relationship between Mr. Hoover and the defendant, attenuated by nine years and virtually no contact either at the time of the relationship or after, was limited. The defendant himself, who did not recollect Mr. Hoover's name or face at the time of voir dire or during the trial, corroborated the limited interaction the two had and the absence of any confrontation between them. Only Ms. Hays, who knew Mr. Hoover and the defendant intimately, had an opinion as to Mr. Hoover's prejudice. The facts here are very close to those before the Ninth Circuit in *Jackson,* in which the court found no error in the denial of a motion for new trial "where it is discovered, after a trial, that an answer given by a prospective juror was incorrect because of an oversight or failure to understand the question, and no reasonable possibility of prejudice is shown...." *Jackson,* 408 F.2d at 309.

Under these circumstances, the defendant may have some likelihood of success on his motion for a new trial, pending argument and the trial judge's consideration of the briefs, but he has failed to make a showing of *substantial* likelihood. Therefore, he has failed to satisfy the first prong of the test under 18 U.S.C. § 3143(a)(2).

2. *Likelihood of Flight:* Although the court has found that defendant has failed to meet the first prong of § 3143(a)(2)(A)(i), it will proceed to determine whether the defendant has shown by clear and convincing evidence that he is not likely to flee.

The magistrate judge gave substantial weight to the testimony of Robert Bainville, the proposed resident custodian of the defendant. Mr. Bainville offered to employ defendant at his company, Sun Phoenix

Construction, for a minimum of 48 hours per week and permit defendant to live with him during the release period. In addition, Mr. Bainville proffered posting of a $50,000 property bond, adding to defendant's proffer of continuing the $50,000 property bond previously posted. The magistrate judge noted that the forfeiture of the property in case of flight, as well as defendant's pending motion for a new trial, presented sufficient grounds for his continued presence in the jurisdiction.

At the hearing before this court, the government elicited facts showing that Mr. Bainville's Virgin Islands license to practice as a general contractor has expired. According to language found in the license, failure to renew one's license means that the business is "without legal authority to continue and will be closed." Government's Exhibit 1. Mr. Bainville acknowledged that, in fact, his business is without legal authority at this time, but he explained that, due to the loss of certain tax records during Hurricane Hugo and the delay in reconstructing them, he has not completed the process of renewing his license. Be that as it may, Mr. Bainville's business is on unstable legal authority and this court cannot sanction releasing a convicted defendant to work with a contractor whose business may be closed.

Defendant then presented James Overton, his brother-in-law, who is a licensed general contractor in St. Croix. He offered to give the defendant a job working with him on a home remodeling project that would last four to five weeks and on another job expected to be signed imminently. Mr. Overton also offered to transport the defendant from the job to Mr. Bainville's home every day.

The government argues that the fact that defendant has been found guilty of crimes of violence, which carry substantial sentences of a minimum of seven years, is enough to defeat the defendant's showing that he will not flee. Furthermore, it argues, even if the motion for a new trial were granted, the defendant would be convicted again based on, as the magistrate judge himself commented, the "very

strong" evidence against him. It seems, therefore, that the fact of defendant's pending motion for a new trial, standing alone, could fall either in favor of or against detention at this time. Defendant's strongest evidence, therefore, is the testimony of Mr. Overton, the proposed custodian, and certain restrictive conditions of release.

3. *Danger to the Community:* The crimes of which the jury found this defendant guilty beyond a reasonable doubt are by their nature violent and shocking to the conscience. The victims are two six-year old girls, one of whom testified at trial that the defendant rubbed his penis against her buttock; she also described the defendant's acts of fellatio and the taste of semen. The mother of one of the victims testified that the child would be traumatized if defendant were to be released and encounter her; even the knowledge of his release would be painful. The government also presented expert testimony from Mary Mingus, Director of the Women's Coalition of St. Croix, and Sara Dessel, a child advocate/therapist at the Women's Coalition, substantiating the powerful impact the defendant's release would have on these children.

Defendant sought to show that he would not pose a danger to these children or to the community at large because of the strict proposed conditions of his release and the fact that there are no known violations of bail prior to trial, an issue disputed by the government. He argues that the close live/work supervision by the custodian would prevent any risk of danger to the community or these children. He also established his strong ties to the community, his stable employment record at Hess Oil and the absence of a criminal record.

The court has no trouble concluding that defendant has not met his burden of showing, by clear and convincing evidence, that he is not likely to flee or pose a danger to the community. Given the nature of the crime committed by this defendant, the "very strong" evidence presented at trial against him, the substantial minimum prison terms the Virgin Islands Legislature

has imposed for these offenses regardless of one's criminal history, the severe and traumatic impact his release would have on the children involved and the danger a second offense poses to the most vulnerable group in the St. Croix population, this court finds that Brett Clark must be detained while awaiting sentencing.

In further support of this finding, the court notes that the defendant still has ready access to one of the victims, his stepdaughter, apparently through prison visits with her mother, the defendant's wife. This situation prevails despite the fact that Mrs. Clark testified at trial, and confirmed at the hearing before this court, that she has slept in her daughter's room in order to protect her from the defendant. The potential for pressure and harm from any contact between defendant and his stepdaughter is great, particularly in light of the possibility of a new trial. Therefore, I will order that the defendant have no contact, supervised or otherwise, with his stepdaughter.

An appropriate detention order will be entered.

### ORDER

This matter having come before the court on the motion of the Government to review the Magistrate Judge's April 22 order releasing defendant prior to sentencing; and

The court having considered the submissions of the Government and defendant and the arguments of counsel; and

The court having conducted a de novo evidentiary hearing on April 25, 1991; and

For the reasons stated in the opinion of this date;

IT IS this 29th day of April 1991 hereby

ORDERED that the magistrate judge's order of release is REVERSED; and it is further

ORDERED that the defendant is committed to the custody of the Bureau of Corrections pending sentencing; and it is further

ORDERED that the defendant be afforded a reasonable opportunity for private consultation with defense counsel; and it is further

ORDERED that the defendant have no contact, supervised or otherwise, with his stepdaughter while awaiting sentencing and the outcome of the motion for a new trial; and it is further

ORDERED that upon order of the court or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of appearing in connection with a court proceeding.