### UNITED STATES of America, Appellant,

v.

### Clayton BERARDI, Defendant-Appellee.

### No. 872, Docket 79–1434.

United States Court of Appeals, Second Circuit.

Argued March 12, 1980.

Decided June 19, 1980.

Certiorari Denied Nov. 17, 1980. See 101 S.Ct. 534.

---

David Rothenberg, Asst. U. S. Atty., W.D.N.Y., Rochester, N.Y. (Richard J. Arcara, U. S. Atty., W.D.N.Y., Gerald J. Houlihan, Asst. U. S. Atty., W.D.N.Y., Rochester, N.Y., of counsel), for appellant.

Alfred P. Kremer, Rochester, N.Y., for defendant-appellee.

Before LUMBARD, FRIENDLY and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

The United States appeals from a judgment of acquittal entered in the United States District Court for the Western District of New York notwithstanding a jury verdict finding appellee Clayton Berardi guilty of perjury committed before a grand jury. Immediately prior to the scheduled imposition of sentence, Judge Werker ruled that the false declaration for which appellee had been convicted was immaterial to the matters under investigation and accordingly concluded that the one count indictment failed to state an offense. We hold that determination to be erroneous and reject the alternative grounds proffered by appellee in support of the relief granted by the district court. The judgment is therefore vacated, the verdict reinstated and the action remanded for further proceedings not inconsistent with this opinion.

I.

In June, 1975, detectives from the Monroe County Sheriff's Office arrested Joseph Lanovara and Angelo Monachino and charged them with complicity in the 1973 murder of one Jimmy Massaro. These suspects thereafter cooperated with law enforcement authorities in the continuing probe and implicated six individuals, alleged to be members of organized crime, in the planning and ordering of the gangland-style execution.

Under New York law, however, criminal convictions may not be based upon the uncorroborated statements of accomplices.[1] Because they lacked the requisite independent verification of the information given by Lanovara and Monachino, members of the Monroe County Sheriff's Office embarked upon a scheme to concoct such evidence. More particularly, it appears that Chief of Detectives William Mahoney induced Detective William Marks and Detec-

---

1. New York Criminal Procedure Law § 60.22 (McKinney) in pertinent part provides:

   1. A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense.

2. An "accomplice" means a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in:

   (a) The offense charged.

tive Lieutenant John Kennerson to assert that while conducting routine surveillance in November, 1973, they observed their co-operating witnesses in the company of the six suspects at the dates, times and places attested to by Lanovara and Monachino. Notes and surveillance logs were fabricated to buttress these claims. Based upon accomplice testimony as corroborated by Marks and Kennerson, the six defendants were convicted of murder.

In September, 1977, a Monroe County Detective, one Lawrence Ronayne, informed agents of the Federal Bureau of Investigation that the prosecution had introduced counterfeit evidence and perjurious testimony at the Massaro murder trial. A federal grand jury was impaneled the following month and given a mandate to investigate all facets of this scheme. In January, 1978, Marks confessed to having provided false corroborative evidence and pleaded guilty to conspiracy to violate the civil rights of the six defendants. The convictions of those individuals were subsequently overturned and the charges dismissed.

The month following Mark's plea, appellee, who during the times relevant to the inquiry served as a detective in the Monroe County Sheriff's Office, was summoned before the grand jury. Berardi was asked if he had been solicited to commit perjury in connection with the Massaro murder prosecution, to which he responded in the negative. He was further asked a series of questions inquiring if he had told certain individuals that he had been entreated to assist the scheme, and he again replied in the negative.

In April, 1978, the grand jury returned an indictment charging several individuals with conspiracy and substantive violations of the civil rights of the six murder defendants, and in a separate one count indictment, accused appellee of two specifications of perjury, the first relating to his denial of having been solicited to commit perjury and the second consisting of his denial of having told others that he had been approached for this purpose.[2] At trial, the prosecution introduced testimony from Ronayne and a second detective, each of whom claimed to have overheard Berardi muttering on several occasions about his opposition to the scheme and his resolve not to join it. More significantly, Detective John Grande, em-

2. The two specifications of perjury set forth in the indictment consisted of the following colloquies:

Q. And at any time during the time you were working at the Sheriff's Office, were you ever asked by anyone to falsely testify, alter your testimony in any fashion?

A. No, sir.

Q. Have you ever been asked to do that by anyone?

A. No, sir.

AND:

Q. Sometime after Angelo Monachino had flipped over and decided to cooperate, were you ever asked to testify regarding any surveillance?

A. No, sir, I never was.

Q. Were you ever asked to manufacture any evidence to corroborate any of the testimony of Angelo Monachino?

A. Absolutely not.

Q. Did you ever have a conversation with John Grande concerning the surveillance log, the surveillance that was performed by Kennerson and Marks?

A. I don't remember it. I did have a conversation in maybe September or October with Grande. I went to Grande's office, I was called to his office. He told me that he said, "Listen, remember the conversation we had in the coffee shop, the coffee room of the Sheriff's Department?" I said, "No," he said—let me get this straight, that I had told him that I had—I'm not even sure; I had been asked to testify and I turned them down. I told him that no, that conversation had never taken place and he said he had talked to the F.B.I. about it. I told him, "John, if you're going to talk to these people, just tell them the truth. I don't remember the conversation and I really doubt that it happened," and that was it.

Q. Did you ever tell anyone prior to September of this year that you had been asked to testify to the same things that Marks had testified to?

A. No, just what I told you in our interview a couple months ago, that there had been rumors I had been asked to testify and I told them no and I refuted the rumor, at least once in the Detective's Bureau.

Q. Did you ever complain to anyone at the Detective's Bureau that you were asked to do that and you refused?

A. Absolutely not.

ployed by the Rochester Police Department and acting during the Massaro murder investigation as a liaison to the Monroe County Sheriff's Office, testified that in September, 1975, he had a conversation with appellee during which Berardi confided that his assistance in the scheme had been unsuccessfully requested. A second officer from the Rochester Police Department, Donald Miglioratti, testified that appellee had informed him in 1975, prior to the murder trial, that the surveillance logs had been fabricated, and in later conversations, revealed that his active involvement in the venture had been sought. Additionally, the grand jury minutes were admitted into evidence and testimony was received from an Assistant United States Attorney concerning the scope of the grand jury's inquiry.

Subsequently, the jury returned a verdict acquitting appellee of the first specification of perjury, but convicting him of the second. A motion for a new trial based on allegedly erroneous evidentiary rulings was denied from the bench, and approximately two weeks thereafter, the court in a written opinion rejected the claim that the government had failed to fulfill its duty under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in that it withheld from the defendant an allegedly exculpatory document. On the date scheduled for imposition of sentence, however, the court, apparently acting *sua sponte*, declared that the statements set forth in the second specification of perjury, to the extent they were not repetitive of the first specification, were immaterial to the grand jury's investigation. The court, in pertinent part, stated:

> ". . . in my opinion the questions asked in the second specification do not reach the degree of materiality required to convict this defendant. This was true at the time that they were asked, and it was more true after the jury came in with the verdict of not guilty on the first specification. While duplicitous pleading

is permitted in perjury indictments, in my opinion in this case the finding of not guilty on the first specification covered the second specification because the answers to the questions put in the second specification would not have misled or entered the Grand Jury's inquiry, assuming as we must now do that the answers to those questions in the first specification were true."

In addition, the court chastised both counsel for improper behavior. A review of the record, however, indicates that its order to enter a judgment of acquittal notwithstanding the verdict was predicated solely upon the concerns evinced in the portion of the transcript quoted above. This appeal by the United States followed.

## II.

Section 1623 of Title 18 proscribes "false material declarations" made before the grand jury,[3] and thus, by its own express terms, the statute is contravened only when the perjury is committed in response to a question which bears upon the matters within the investigation's purview. *United States v. Mulligan*, 573 F.2d 775, 779 (2d Cir.), *cert. denied*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120 (1978). The government must shoulder the burden of demonstrating this nexus, though it need not be established beyond a reasonable doubt. *United States v. Giacalone*, 587 F.2d 5, 7 (6th Cir. 1978), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1646, 64 L.Ed.2d 235 (1979). Normally, the government's obligation is satisfied simply through the introduction into evidence of the grand jury minutes, or through the testimony of the foreperson or presenting prosecutor concerning the scope of the grand jury's charter, and the relationship to it of the questions which elicited the perjury. *United States v. Albergo*, 539 F.2d 860, 863 (2d Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976); *United States v. Alu*, 246 F.2d 29, 32 (2d Cir. 1957).

---

3. Title 18 U.S.C. § 1623(a) provides in pertinent part:

"Whoever under oath . . . in any proceeding before . . . [a] grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both."

As mentioned above, the district court had the advantage of both the minutes of the grand jury and the testimony of the Assistant United States Attorney in charge of the investigation.

■ Materiality presents a threshold issue which must be determined by the court. *Sinclair v. United States*, 279 U.S. 263, 298–99, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929); *United States v. Mulligan, supra*, 573 F.2d at 779. Rather than making a post verdict assessment on the issue of materiality as happened here it is better decided at the earliest opportunity since it is a necessary element of the crime of perjury, *United States v. Phillips*, 540 F.2d 319, 327, n. 6 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976). In any event, it should be determined prior to submission of the case to the petit jury because that body should be instructed that it need not deliberate over this essential element of the offense. *United States v. Damato*, 554 F.2d 1371, 1373 (5th Cir. 1977).

Given the wide-ranging investigative function of the grand jury, *see United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974), as may be illustrated by comparison with other official proceedings whose objectives are limited or more precisely defined, *see United States v. Birrell*, 470 F.2d 113, 115 n. 1 (2d Cir. 1972) (perjury in affidavit submitted in support of application to proceed *in forma pauperis*); *United States v. Freedman*, 445 F.2d 1220, 1227 (2d Cir. 1971) (perjury before the S.E.C.), the materiality of its inquiries must be broadly construed. *United States v. Demauro*, 581 F.2d 50, 53 (2d Cir. 1978); *United States v. Doulin*, 538 F.2d 466, 470 n. 3 (2d Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). In its classic formulation, this element is established where the false declaration has "a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation, . . . ." *Carroll v. United States*, 16 F.2d 951, 953 (2d Cir.), *cert. denied*, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880 (1927). *See also United States v. Fayer*, 573 F.2d 741, 745 (2d Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *United States v. Rapoport*, 545 F.2d 802, 805 (2d Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *United States v. Mancuso*, 485 F.2d 275, 283 (2d Cir. 1973).

■ Materiality is thus demonstrated if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability. Thus, in applying this gauge to specific situations, it is only the question, at the time of its asking, which is considered. It is of no consequence that the information sought would be merely cumulative, *United States v. Richardson*, 596 F.2d 157 (6th Cir. 1979), that the response was believed by the grand jury to be perjurious at the time it was uttered, *United States v. Lee*, 509 F.2d 645 (2d Cir.), *cert. denied*, 422 U.S. 1044, 95 S.Ct. 1653, 44 L.Ed.2d 85 (1975), or that the matters inquired into were collateral to the principal objective of the grand jury. *United States v. Stone*, 429 F.2d 138, 140–41 (2d Cir. 1970).

■ With these guidelines in mind, we hold that the district court erred in deeming the second specification of perjury to be immaterial. The grand jury's mandate was to probe a scheme to deprive various individuals of their civil rights. By denying that he had confided to others that he had been entreated to join in this illicit effort, appellee potentially hampered the investigation in several significant ways. Through his disclaimer, appellee created the false impression that he was ignorant, unaware or untouched by the scheme, and thereby deprived the grand jury of the benefit of his knowledge of the plot. It is a truism that questions aimed directly at a witness' knowledge or awareness of the principal matter under investigation are material. *United States v. Demauro, supra*, 581 F.2d at 54. A forthright exposition of the conversations which appellee wrongfully denied having could well have revealed the identities of the conspirators, their objectives and methods, and the dimensions of

the conspiracy. A candid response might have corroborated other information gathered by the grand jury concerning the involvement of others and the degree and nature of the participation of those suspects. Furthermore, in revealing the identities of persons to whom he had confided that corrupt approaches had been made to him, he might have provided valuable leads to the grand jury. Finally, it might be added that the false declarations could have frustrated the inquiry by casting doubt upon the credibility of other witnesses who had attested both to Berardi's assertions of having been solicited for the scheme and to matters bearing more directly upon the conspiracy.

The district court's order apparently rested in some measure upon a concern that the two specifications were merely repetitive, that the indictment was "duplicitous," and that the acquittal on the first specification therefore barred conviction on the second. Such objections are generally deemed to be waived if not properly raised before trial, *United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). In any event, we hold that insofar as the judgment of acquittal may be attributed to a perception of the duplicitous character of the accusations, or for the reason that follows, their multipliciousness, it must nonetheless be vacated.

Although it is no doubt true that a single lie merits but a single punishment, *United States v. Williams*, 552 F.2d 226, 228 (8th Cir. 1977), *quoting Gebhard v. United States*, 422 F.2d 281, 289–90 (9th Cir. 1970), it has long been accepted practice to charge perjury before the grand jury, committed in the course of the same appearance, in a one count indictment with each false declaration set forth in a particular specification. *United States v. Otto*, 54 F.2d 277, 280–81 (2d Cir. 1931). So long as these separate specifications aver different falsehoods, the indictment will not be held defective on the ground that their pleading is duplicitous, that is, averring more than one offense within a single count, or multiplicious, that is, charging the same offense in several separate counts. *See United States v. Mur-*

*ray*, 618 F.2d 892, 897 (2d Cir. 1980). Acquittal on one of several adequately pleaded specifications will not therefore preclude conviction on others under doctrines of res judicata or collateral estoppel.

In this regard, the indictment at bar was properly drawn since the two specifications were sufficiently distinct. The first line of inquiry asked if appellee had been formally solicited to participate in the venture, and the second, shorn of permissible contextual background, *cf. United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980), asked if Berardi had ever told other individuals that he had been so approached. These questions plainly sought distinct information, and indeed, the truth or falsity of appellee's responses to each could only be established by resort to different bodies of evidence.

It hardly bears noting that the jury's not guilty verdict as to the first specification does not render its guilty verdict on the second legally insupportable, *see United States v. Ford*, 603 F.2d 1043, 1047 (2d Cir. 1979) (". . . even plainly inconsistent jury verdicts, simultaneously rendered are the jury's prerogative." *Citing United States v. Zane*, 495 F.2d 683, 690 (2d Cir.), *cert. denied*, 419 U.S. 895, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974)), or factually incompatible since it does not conclusively establish that such approaches were never in fact made, but only that the government had failed to prove part of its charge beyond a reasonable doubt. Even if we were to assume *arguendo* that the acquittal on the first specification demonstrated the literal truth of Berardi's answer, appellee could nonetheless have been guilty of the second specification: the fact that nobody had affirmatively sought his participation in the scheme did not preclude him from having made assertions to that effect to others.

We have carefully reviewed the transcript of the proceedings at which Judge Werker ordered the entry of the judgment of acquittal and other pertinent portions of the record and conclude that the district court's action was based solely on the concerns discussed above, and not upon other grounds such as the government's al-

leged failure to fulfill its *Brady* obligations, prosecutorial misconduct or trial error. Those claims are not before us. Additionally, we have weighed appellee's alternate arguments in support of the judgment of acquittal and find them to be without substance. The contention that the United States Attorney has not complied with internal procedures governing the right of the United States to appeal from the ruling below, even if factually substantiated, would be of no avail to appellee. *United States v. Caceres*, 440 U.S. 741, 59 L.Ed.2d 733 (1979). Additionally, in overruling the district court we do not infringe appellee's rights under the double jeopardy clause of the Fifth Amendment since our action does not necessitate a retrial, but merely the reinstatement of a verdict previously rendered and which was not set aside for evidentiary insufficiency. *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978), *and see Sanabria v. United States*, 437 U.S. 54, 63, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978), and *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569–70, 97 S.Ct. 1349, 1353–54, 51 L.Ed.2d 642 (1977).

Accordingly, the judgment is vacated and the case remanded for further proceedings not inconsistent with this opinion.