UNITED STATES of America

v.

Harry PHILLIPS.

Crim. A. No. 86–428.

United States District Court,
E.D. Pennsylvania.

Nov. 24, 1987.

S. Walter Batty, Jr., Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Stephen R. Lacheen, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendant Harry Phillips is charged in a superceding indictment with 5 counts of false declaration before the grand jury on December 12, 1984, in violation of 18 U.S.C. § 1623.[1]

Defendant filed an omnibus pretrial motion. An evidentiary hearing was held August 17, 1987 on two portions of that motion: the motion to suppress identification testimony and the motion to dismiss the indictment or, in the alternative, to suppress the defendant's grand jury testimony. At this hearing, defendant asserted a new theory with regard to the motion to dismiss. Accordingly, the Court allowed the government to submit a supplemental memorandum, to which the defendant responded. The issues having been fully briefed, and the Court having carefully reviewed the grand jury transcripts, this memorandum constitutes my findings of fact and conclusions of law.

## I. The Motion to Suppress Identification Testimony

On December 6, 1984, government witnesses Francis Matherly and Benedict LaCorte accompanied FBI Agent David Richter to the auto salvage yard operated by the Phillips brothers. Matherly and LaCorte are cooperating with the government pursuant to plea agreements. Both witnesses claim to have sold stolen goods to the defendant in the 1970's.

Mr. LaCorte directed Agent Richter to the salvage yard. The witnesses were at the salvage yard when the defendant drove into the parking lot. Mr. LaCorte recognized defendant as Harry Phillips, and told Agent Richter "That's Harry." Mr. Matherly also testified that he recognized the defendant as Harry Phillips when he pulled into the parking lot. Matherly and LaCorte both testified that they had met the defendant on a number of prior occasions. Both witnesses were able to identify the defendant in open court.

The grand jury subpoenas which had been prepared by Agent Richter on or about December 6, 1984 bore the names of Sam Phillips and David Phillips, two brothers of the defendant. When he spoke to the defendant on December 6, 1984, Agent Richter learned that David Phillips had died some years before. Agent Richter testified that the decision to go to the Phillips' salvage yard had been a hurried one, and he had been uncertain as to which of the Phillips brothers he would find there. There is no evidence that either LaCorte or Matherly had suggested that the subpoena be issued in the name of David Phillips. The error on the subpoena in no way undermines the reliability of the witnesses' identification of the defendant.

Because I find no reason to doubt the reliability of the identifications, I will deny the motion to suppress.[2]

## II. Motion to Dismiss The Indictment

### A. "Perjury Trap"

Defendant's motion to dismiss the indictment was originally put forth, at least in

---

1. The original indictment had charged defendant under 18 U.S.C. § 1621.

2. Following the close of evidence, the defendant, while calling the out-of-court identifications "suggestive," conceded that there was no evidence to support the theory that, absent the December 6, 1984 identifications, the witnesses would not have been able to identify the defendant in open court. Therefore, the defendant declined to argue his motion to suppress the identification.

My discussion of this portion of the motion is issued in order to complete the record.

part, in terms of a "perjury trap." Defendant has not pursued this facet of his motion, and I address it only for the sake of thoroughness.

 The "perjury trap" theory asserts that prosecutorial conduct designed to trap a witness into perjuring himself before a grand jury is misconduct so severe as to constitute a violation of the witness' due process rights. This theory has received some judicial support. *See United States v. Caputo*, 633 F.Supp. 1479 (E.D.Pa.1986), *rev'd on other grounds sub. nom. United States v. Martino*, 825 F.2d 754 (3d Cir. 1987); *United States v. Simone*, 627 F.Supp. 1264 (D.N.J.1986); *United States v. Crisconi*, 520 F.Supp. 915 (D.Del.1981). However, an indictment will be dismissed only in the most egregious circumstances. *See United States v. Twigg*, 588 F.2d 373 (3d Cir.1978).

In the present case, defendant was fully advised of the right to counsel, the right to remain silent, and the nature of the investigation. The record simply does not establish the type of outrageous conduct which must be shown before a due process violation will be found. Therefore, assuming without deciding that a "perjury trap" laid by the government could be grounds for the dismissal of an indictment, that defense has not been established here.

### B. *Materiality*

The heart of defendant's motion is that the grand jury testimony which is alleged to be perjurious was not material to a matter then properly under consideration by the grand jury. Defendant contends that the Assistant United States Attorney incorrectly advised the grand jury that the statute of limitations could not begin to run on the crime of possession (or concealment) of stolen goods as long as the defendant continued in possession of those goods. Defendant argues that this was an incorrect statement of the law, and that the statute of limitations had already expired as to the crime of concealment of stolen goods. He argues that this incorrect statement interfered with the grand jury's abili-

ty to exercise its independent judgment as to the materiality of the testimony.

Further, defendant suggests that the grand jury before which he testified was not, at the time of his testimony, investigating the continued concealment of stolen goods or the transportation of stolen goods from Pennsylvania to other states. Therefore, it is argued, even if the statute of limitations had not run as to such crimes, they were not the subject of a grand jury investigation at the time of the defendant's testimony. Defendant concludes that, therefore, the allegedly perjurious testimony was not material to the grand jury's investigation.

Finally, the defendant argues that the grand jury may have based its decision as to the element of materiality on the concept of possession, rather than concealment, since that is the term which was used by the Assistant U.S. Attorney in proposing the original indictment.

The materiality of the allegedly perjurious testimony is a threshold issue to be determined by the Court. *United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). This issue is properly before this Court at this time.

I must first determine when the statute of limitations begins to run on the crime of concealment or possession of stolen goods. The government contends that concealment and possession are continuing acts, and that the statute does not begin to run until the possession is terminated. This theory was expressed before the grand jury.

The defendant contends that the requirement of an interstate nexus is critical with regard to the statute of limitations. According to the defendant, the interstate nexus, which was created when the stolen goods crossed state lines, eventually evaporates if the goods remain within one state for enough time. Once the interstate nexus disappears, a necessary element of the federal crime is no longer present, and therefore any criminal activity within this Court's jurisdiction has ceased. Defendant contends that, at the outside, the interstate nexus would disappear by the end of the

five year limitations period applicable to the receipt of stolen goods. Defendant concludes that the statute of limitations as to the concealment of stolen goods had expired by December, 1984, when the defendant testified before the grand jury.

■ There can be no dispute that, at some point, the goods may lose their interstate nexus. *United States v. Thies*, 569 F.2d 1268, 1272 (3d Cir.1978). But the point at which this occurs cannot be determined by reference to a calendar. Rather, it must be determined by looking at the facts of a particular case to determine whether the goods have reached their final resting place, or have simply paused at one juncture in a scheme of interstate transportation of stolen property. *Thies*, 569 F.2d at 1273. *See United States v. Luman*, 624 F.2d 152, 155 (10th Cir.1980); *McNally v. Hill*, 69 F.2d 38, 40 (3d Cir.1934).

■ Since the application of the statute of limitations, and the loss of the interstate nexus, involve questions of fact, the grand jury could not have determined whether a prosecutable crime had been committed until it had completed its investigation. There was a reasonable possibility that such a crime had been committed by some or all of the Phillips brothers, and that the statute of limitations had not run.

Therefore, the ultimate question is whether the grand jury was, at the time of defendant's testimony before it, investigating the continued possession or concealment of stolen goods or their transportation out of Pennsylvania. If the only matter being considered by the grand jury was the receipt of stolen goods in the 1970's, crimes on which the statute of limitations had clearly run, then the questions posed to the defendant were not material to a legitimate grand jury investigation. If, however, the scope of the grand jury's investigation included the concealment and resale of those goods and sought to determine when, if ever, that had occurred, then the questions posed to the defendant were material to a legitimate investigation.

I have carefully examined the grand jury transcripts in their entirety, with particular attention to the transcript of defendant's testimony on December 12, 1984 and to the transcript of Agent Richter's testimony on October 8, 1986. The transcripts support the government's description of the scope of the investigation.

Defendant was advised on December 12, 1984 that the grand jury was investigating "interstate theft offenses, more particularly items that have been shipped in interstate commerce after they've been stolen." (Tr. Dec. 12, 1984 at 2). This description is certainly broad enough to include concealment of goods or transportation of goods out of Pennsylvania. Defendant was also asked about his brother's activity in selling antiques. (*Id.* at 15). He was asked about the storage of antiques on his property. (*Id.* at 35). Most importantly, he was asked about his brother, Joe Phillips, in New York City. (*Id.* at 17–18).[3] These questions would have been pointless unless the investigation had, from the outset, included the concealment of stolen goods and their subsequent transportation out of the Commonwealth.

Agent David Richter testified before the indicting grand jury on October 8, 1986. Under oath, he confirmed the accuracy of the Assistant U.S. Attorney's statement that one of the purposes of the investigation "has been to see if there were any stolen goods still with Harry or Sam or had been with them at any point within the past five years such as we would have regular jurisdiction over receiving goods which had been transported in interstate commerce." (Tr. Oct. 8, 1986 at 5–6). He also confirmed that "a second focus of the investigation was to see if there are any stolen goods which went from any of the Phillips Brothers to their fourth brother Joe in New York City." (*Id.* at 7). I have no reason to question the credibility of Agent Richter, who testified in the hearing before me on August 17, 1987 and was subject to

---

3. The government had inconclusive information that the stolen goods were distributed through Joe Phillips in New York.

cross examination by the defendant at that time.

The mere fact that the grand jury's investigation did not reveal any crimes committed within the statute of limitations is not dispositive. Not every grand jury investigation results in an indictment. The grand jury seeks to determine the truth; it exists to investigate possible crimes and to protect the innocent from indictment.

■ A question asked of a grand jury witness is *material* if it "is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability.... [I]t is only the question, at the time of its asking, which is considered. It is of no consequence that the information sought would be merely cumulative, that the response was believed by the grand jury to be perjurious at the time it was uttered, or that the matters inquired into were collateral to the principal objective of the grand jury." *United States v. Berardi*, 629 F.2d 723, 728 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). Even where the statute of limitations on underlying crimes has run, if truthful answers could have led to a more fruitful investigation of the broader subject matter of the grand jury's inquiry, the perjurious testimony is material. *United States v. Devitt*, 499 F.2d 135, 140 (7th Cir.1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975).

The questions asked of Harry Phillips were material to the grand jury's investigation. His denial of any acquaintance with the persons in question hindered the investigation into his dealings with those persons and, if he purchased stolen goods from them, the later history of those goods.

■ Finally, defendant makes much of the fact that the original indictment alleged that the investigation concerned the receipt and *possession* of stolen goods, while the superceding indictment alleges that the investigation concerned the receipt and *concealment* of such goods. Defendant points out that the word "possession" was not contained in the statute at the time of the defendant's testimony in 1984. Defendant contends that the grand jury may well have made its decision as to the element of materiality based on the use of the word "possession" rather than "concealment," and that this constituted interference with the grand jury's ability to exercise its independent judgment.

The superceding indictment was presented to the grand jury on March 4, 1987. The transcript of the Assistant U.S. Attorney's comments reveals that he was careful to make clear to the grand jurors that one of the changes in the indictment was the use of the word "concealing." The Assistant U.S. Attorney explained:

> [t]o conceal means to do any act intended to prevent discovery or identification of the stolen item by its true owner. Mere possession is not enough. Concealing does not require an actual hiding or secreting of the property. But once again, any acts which render its discovery difficult constitutes concealing.

(Tr. Mar. 4, 1987 at 5).

The Assistant U.S. Attorney then explained to the grand jurors that, because of the limited time available on their last day of service, he would not ask the jurors to review the transcripts of the testimony which they had considered five months earlier. But he cautioned them that if any juror did not feel able to recollect the facts of the case, they should not consider the superceding indictment, and the matter would be presented to another grand jury at a later date. (*Id.* at 6–7). The Assistant U.S. Attorney then left the room to allow the grand jury to deliberate on the question of whether they felt able to vote on the superceding indictment. Following deliberations, the foreman reported that "[w]e discussed the matter and the Jury feels comfortable voting on the superceding indictment." (*Id.* at 7).

The grand jury clearly felt able to recall the investigation and to exercise its independent judgment in this matter. Since the grand jury specifically took the time to

consider this question, I decline to substitute my judgment for their own.

For all of these reasons, the defendant's motion to dismiss the indictment or, in the alternative, to suppress defendant's grand jury testimony will be denied.