**UNITED STATES of America,**

**v.**

**Michael COIRO, Defendant.**

**No. CR–91–0294.**

United States District Court,
E.D. New York.

Feb. 25, 1992.

---

**328**

James Orenstein, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

David A. DePetris, DePetris & Meyer, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendant in this criminal action moves to compel disclosure of his grand jury testimony, to dismiss the indictment, and to suppress the fruits of certain electronic surveillance; the government cross-moves for a protective order with respect to the grand jury testimony of the defendant. For the reasons set forth below, the motions of the defendant are denied, and the motion of the government is granted.

### FACTS

On November 30, 1989, the defendant in this action, Michael Coiro, was found guilty on charges that included conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. That evening, Michael Coiro engaged in conversations with John Gotti at the Ravenite Social Club in Manhattan; those conversations were secretly recorded by federal agents. The government alleges that, during the course of their discussions, Gotti directed Coiro to contact Coiro's "sources" of law enforcement information in order to ascertain the details of a pending investigation into the murders of Paul Castellano and of Thomas Bilotti. The government also alleges that at least part of these conversations on November 30, 1989 took place in an apartment located above the Ravenite Social Club.

After Coiro was incarcerated, he was summoned to testify before a federal grand jury. During several days of testimony in October and November of 1990, Coiro was asked about the conversations he had with Gotti at the Ravenite on November 30, 1989. In his grand jury testimony, Coiro denied that he had any discussions with Gotti about obtaining information from law enforcement "sources" with respect to the pending murder investigation. See Indictment ¶ 4. He also denied that he had agreed to obtain such information from his corrupt "sources." *Id.* ¶ 8. Further, Coiro denied that his November 30, 1989 conversations with Gotti had taken place anywhere other than inside the Ravenite Social Club itself. *Id.* ¶ 11. Finally, Coiro testified before the grand jury that, although

he had failed to disclose to his probation officer on December 1, 1989 that he had a proprietary interest in a firm called Scorpio Marketing (the nominal employer of John Gotti), he nonetheless had not discussed with anyone before his meeting with the probation officer that he would omit reference to his interest in the firm. *Id.* ¶ 14.

After his testimony, the grand jury determined that these four denials by Michael Coiro constituted an adequate basis for the return of an indictment against him. The first four counts of this indictment allege that Coiro perjured himself before the grand jury. *Id.* ¶¶ 5, 9, 12, and 15. The fifth and final count of the indictment charges that Coiro obstructed justice by giving "false, evasive and misleading testimony" before that grand jury. *Id.* ¶ 17. However, after the grand jury voted in April of 1991 to indict Michael Coiro on these five counts, the indictment was sealed until November of 1991.

The defendant has now presented his pretrial motions before this court. He moves: (1) for discovery of his grand jury testimony "which allegedly formed the basis for the ... indictment," Defendant's Notice of Motion ¶ 1; (2) for dismissal of the indictment, or of certain counts of the indictment, "on the ground that those certain counts were ... not related to material matters and that the Government and the grand jury knew the answers to those questions," *id.* ¶ 2; (3) for dismissal of the indictment on the ground that the indictment was sealed for several months and that this sealing "prejudiced the defendant," *id.* ¶ 3; and (4) to suppress "the fruits of illegal electronic surveillance," *id.* ¶¶ 4–5. The government has opposed these motions and has cross-moved for a protective order under which the government would not be required to disclose to Coiro his grand jury testimony until after he has completed his direct testimony in the pending criminal matter against John Gotti.

## DISCUSSION

### 1. *Discovery of Defendant's Grand Jury Testimony*

█ The defendant Coiro moves first for discovery of his testimony before the grand jury in October and November of 1990. Essentially, he claims that discovery of that testimony is necessary to the preparation of his defense on the charges that he perjured himself before that grand jury. Affidavit of David A. DePetris ¶¶ 3–4. In response, the government points out that significant segments of Coiro's grand jury testimony have been set out in the indictment. Government's Memorandum of Law at 3. Furthermore, the government represents that it "will turn over the remaining portions of Coiro's ... testimony well in advance of trial." *Id.* Thus, insofar as Coiro seeks an order from this court to compel the government to disclose Coiro's testimony, such an order is unnecessary. The government has pledged to make this disclosure "well in advance of trial."

However, the government does seek to control the timing of its disclosure: It has moved this court for a protective order pursuant to which it would not disclose this testimony until after Coiro's direct testimony in the pending John Gotti trial. The government argues that such an order is necessary because, if Coiro obtained his grand jury testimony prior to his testimony in the Gotti case, he would "tailor" that direct testimony "so as to benefit Gotti without further incriminating himself...." Government's Memorandum of Law at 4. In support of this position, the government points out that Coiro's RICO conviction stemmed from obstruction-of-justice predicate acts and that he is at present indicted for perjury. Thus, the government reasons, Coiro has demonstrated a willingness and a capacity to manipulate and to frustrate the truth-seeking function of the judicial process. Immediate disclosure of his grand jury testimony would, on the argument of the government, facilitate such manipulation by Coiro when he testifies at John Gotti's trial.

█ Federal Rule of Criminal Procedure 16(d)(1) provides, in relevant part:

Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred....

The decision whether or not to enter such a protective order is—as with all discovery orders of a court under Rule 16—a matter for the discretion of the district court; thus, such an order will not be disturbed on review unless there is a showing of an abuse of that sound discretion. *United States v. Merrill,* 746 F.2d 458, 465 (9th Cir.1984), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985) ("We may not disturb a district court's discovery rulings in a criminal case unless there has been an abuse of discretion."). Furthermore, such an abuse of discretion in the administration of the discovery rules will only merit reversal if the substantial rights of the defendant have been prejudiced. *United States v. Woosley,* 761 F.2d 445, 448 (8th Cir.1985) ("Discovery matters are committed to the discretion of the trial court, and an error in administering the discovery rules will produce a reversal only on a showing that the error was prejudicial to the substantial rights of the defendant."). See also *United States v. Crisona,* 416 F.2d 107, 115 (2d Cir.1969), *cert. denied,* 397 U.S. 961, 90 S.Ct. 993, 25 L.Ed.2d 253 (1970) (error by district court in discovery matter determined to be harmless); Wright, *Federal Practice and Procedure: Criminal* § 261 (2d ed. 1982) ("Orders by the trial court under Rule 16, whether granting discovery, denying discovery, or imposing protective conditions ... are not appealable.... [T]he possibility of reversal [on ultimate appeal] is slight, since the courts hold that they must affirm unless the trial court abused its discretion and will not reverse if the court order was not prejudicial.").

The case law provides little guidance to judges in their exercise of discretion as to protective orders, and Rule 16 itself conditions the grant of such an order simply upon a "sufficient showing." Research has disclosed no cases that address the factual configuration of this matter: that is, the request for an order to defer—not to deny—discovery of a defendant's own grand jury testimony in order to foreclose possible perjury by that defendant in another criminal proceeding. Justice Brennan may have most closely anticipated this

problem when he observed that: "In the rare case, the denial of all discovery may be compelled to ... prevent an apparent perversion of the judicial process." Brennan, Remarks on Discovery, 33 F.R.D. 56, 65. But the "rare case" to which Justice Brennan referred is not precisely this case: The government here does not seek to deny Coiro the discovery of his grand jury testimony; rather, it simply seeks to defer that disclosure until sometime after his direct testimony in the Gotti case—but still "well in advance of trial." Certainly, it is appropriate for this court to grant a protective order of such limited scope in order to guarantee the integrity of another pending criminal proceeding—particularly in that the defendant does not suggest that he would be prejudiced by such deferral of disclosure. Thus, on the representation of the government that it will timely disclose the defendant's grand jury testimony, the court hereby grants the motion of the government for a protective order.

### 2. *Multiplicity and Materiality of Certain Perjury Counts*

Coiro also moves this court to dismiss part of the indictment on the ground that count two is duplicative of count one and on the ground that count three concerns matters that were not material to the grand jury investigation:

> It would appear from a reading of Counts One and Two of the indictment that the Government is alleging his false testimony relates to the same issue; thus, they may in fact be duplicitous. With regard to Count Three of the indictment, it would not seem to be material to the grand jury investigation where specifically a conversation occurred a year earlier within the "Ravenite" but rather whether in fact a conversation did occur at the Ravenite between the defendant and John Gotti. Further, it appears from the tapes that the Government also knew specifically where the conversation occurred and, thus, it would not seem material or relevant to support a charge such as presented in Count Three.

Affidavit of David A. DePetris ¶¶ 4–5.

 Coiro's first argument is that the substance of count two of the indictment

duplicates that of count one; the indictment, he concludes, is therefore fatally multiplicious.[1] However, an indictment is not multiplicious simply because it charges separate falsehoods during a single appearance before a grand jury. See *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980). Rather, each falsehood to which a grand jury witness testifies may be the subject of a separate perjury count if each one requires the establishment of separate facts. *United States v. Doulin*, 538 F.2d 466, 471 (2d Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). Or, as the Eleventh Circuit has stated the principle more fully:

> In *United States v. De La Torre*, 634 F.2d 792, 795 (5th Cir.1981), this court expounded the standard for multiplicity in prosecutions under 18 U.S.C. § 1623 [perjury before grand jury or court]: "Separate and distinct false declarations in ... testimony, which require different factual proof of falsity, may properly be charged in separate counts, albeit they are all related and arise out of the same transaction or subject matter." Thus, as long as "[d]ifferent evidence [is] required to establish that the various responses were false," *id.*, a multiple count indictment is technically sound and not multiplicious.

*United States v. Molinares*, 700 F.2d 647, 653 (11th Cir.1983).

To examine the first and second counts of this indictment is to conclude that it is "technically sound and not multiplicious." In the first count, Coiro is charged with having made false assertions to the grand jury with regard to whether he and John Gotti had discussions on November 30, 1989 about obtaining information of the Castellano murder investigation from corrupt law enforcement sources. In the second count, Coiro is charged with having made false assertions to the grand jury with regard to whether Coiro agreed to obtain such information for Gotti from corrupt sources whom Coiro knew. Although these alleged falsehoods "are ... related and arise out of the same transaction [and] subject matter," it is nonetheless the case that "[d]ifferent evidence [will be] required to establish that the ... responses were false." For the first allegedly false assertion, the government will be required to prove that Gotti and Coiro had a discussion about obtaining information from law enforcement sources; for the second, the government will be required to prove that Coiro agreed to undertake to gather that information on Gotti's behalf. The alleged falsehoods are closely linked, but they are separate and distinct: The first denial was a denial of the subject matter of a conversation; the second was a denial of a promise made during that conversation. As such, these alleged falsehoods are properly charged as separate counts in the indictment.

 Coiro also contends that count three of the indictment is defective because the alleged falsehood on which it is based did not concern a matter material to the investigation of the grand jury (as required by the perjury statute, 18 U.S.C. § 1623). However, Coiro faces a heavy burden in moving to dismiss this perjury count: The materiality of the inquiries of the grand jury is "broadly construed." *Berardi*, 629 F.2d at 728. For this reason:

> Materiality is ... demonstrated if the question posed is such that a truthful answer could help the inquiry, or a false response hinder it, and these effects are weighed in terms of potentiality rather than probability. Thus, in applying this gauge to specific situations, it is only the question, at the time of its asking, which is considered. It is of no consequence that the information would be merely cumulative, ... that the response was believed by the grand jury to be perjurious at the time it was uttered, ... or

---

1. In fact, Coiro complains that the indictment is "duplicitous" in this manner. However, an indictment is "duplicitous" if it charges more than one crime in a single count; an indictment that charges the same crime in more than one count—the problem that Coiro sees in this indictment—is said to be "multiplicious." *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir.), *cert. denied*, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980).

that the matters inquired into were collateral to the principal objective of the grand jury.

*Id.* (citations omitted). See also *United States v. Kiszewski,* 877 F.2d 210, 218 (2d Cir.1989) (quoting *Berardi* ). Furthermore, when a defendant attacks a perjury indictment as deficient with respect to materiality, the court need look no further than the face of the indictment itself; a simple allegation of materiality will defeat such a motion for dismissal. *United States v. Sun Myung Moon,* 532 F.Supp. 1360, 1373 (S.D.N.Y.1982). As the Ninth Circuit has so well stated the principle: "Under the law of this circuit, 'the materiality requirement of a perjury indictment may be met by a general statement that the matter was material.'" *United States v. Ponticelli,* 622 F.2d 985, 989 (9th Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476 (1980) (quoting *United States v. Davis,* 548 F.2d 840, 845 (9th Cir.1977)). See also *United States v. Mancuso,* 485 F.2d 275, 280–81 (2d Cir.1973) ("We are required to examine *both* the nature of the inquiry at which the testimony was given *and* the evidence introduced *at trial* to prove its falsity, in order to determine whether" the matter inquired of was "material." (emphasis added)).

In this case, the government has not only alleged materiality in count three of the indictment, it has also specifically represented to this court that the grand jury was concerned in part with the identities of the persons with whom John Gotti was holding conversations in a small apartment above the Ravenite Social Club—allegedly the site of Gotti's most sensitive conversations. See Indictment ¶ 10; Government's Memorandum of Law at 5. Thus, the government argues, a truthful answer from Coiro as to where he had spoken with Gotti on November 30, 1989 could have aided the inquiry of the grand jury. Whether or not the grand jury already knew the answer to the question as to which Coiro is now alleged to have perjured himself is clearly irrelevant to the question of materiality. See *Berardi,* 629 F.2d at 728.

Thus, the government has not only met the minimal requirement of pleading materiality on count three of the indictment, it has also offered an explanation as to why the questions put to Coiro were material to the grand jury investigation. On such a showing by the government, this court cannot dismiss the indictment. Whether or not the government is able to establish materiality at trial is, clearly, a matter for another day. At present, however, Coiro's challenge to the adequacy of the indictment must be denied.

### 3. *The Sealing of the Indictment*

█ Coiro next moves to dismiss the entire indictment on the grounds that the indictment was sealed from April of 1991 until November of 1991 and that this sealing caused him prejudice. Specifically, he contends that the indictment was sealed for "no legitimate reason" and that the delay in unsealing the indictment only acted "to cause further clouding of the defendant's memory with regard to an incident [i.e., the Ravenite conversations of November 30, 1989] that occurred some two years ago." Affidavit of David A. DePetris ¶ 6. In reply, the government argues that it sealed the indictment in April of 1991 so that it could "avoid providing Coiro with the minutes of his grand jury testimony prior to his testimony at the *Gotti* trial." Government's Memorandum of Law at 6. The government claims that it perceived a certain urgency in asking the grand jury to return the indictment in April of 1991 because the term of that grand jury was to expire in September of 1991.

Federal Rule of Criminal Procedure 6(e)(4) provides:

The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. Thereupon the clerk shall seal the indictment and no person shall disclose the return of the indictment except when necessary for the issuance and execution of a warrant or summons.

Although the text of Rule 6(e)(4) would appear to indicate that the reason for seal-

ing an indictment is to facilitate taking the defendant into custody, the Second Circuit has held that this rule permits sealing for other purposes. See, *e.g., United States v. Srulowitz*, 819 F.2d 37, 40 (2d Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987) ("We have held that there are various legitimate prosecutorial objectives, including, but not limited to, the facilitation of arrest, that will justify the sealing of an indictment."). Moreover, the magistrate who directs the sealing of the indictment need not memorialize the reasons for the sealing: Rather, a defendant may challenge the sealing of the indictment after it is unsealed, and, at that time, the government must "demonstrate legitimate prosecutorial purposes for the secrecy of the indictment, and the defendant is entitled to show, 'substantial, irreparable, actual prejudice' arising from the decision to seal." *Srulowitz*, 819 F.2d at 41 (quoting *United States v. Edwards*, 777 F.2d 644, 649 (11th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1645, 90 L.Ed.2d 189 (1986)).

▇ In this regard, the government has made an adequate showing of a "legitimate prosecutorial purpose[ ]" for the sealing of this indictment. The government maintains that secrecy of the indictment was necessary in order to frustrate any attempt by Coiro to shade his testimony at the Gotti trial in light of his testimony before the grand jury.[2] The Second Circuit has already determined that a legitimate basis for the sealing of an indictment is the concern for obtaining "complete and truthful testimony" from a witness in a pending criminal matter. *United States v. Southland Corp.*, 760 F.2d 1366, 1378–81 (2d Cir.), *cert. denied*, 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985).

▇ Furthermore, although Coiro has demonstrated some measure of prejudice by the sealing of the indictment—that is, fading recollection of the events that underlie the indictment—that prejudice is not the "substantial [and] irreparable" prej-

udice necessary to defeat the government's legitimate prosecutorial objective. As an initial consideration, the prejudice he has alleged—decrease in memory through the passage of time—constitutes the fashion of prejudice that is sought to be foreclosed through statutes of limitations. And yet, the sealing of an indictment tolls the limitations period for the perjury statute. *Srulowitz*, 819 F.2d at 40. Thus, the passage of time and the fading of recollection is not in itself the "substantial [and] irreparable" prejudice necessary to challenge a sealing; if it were, the doctrine that sealing operates to toll the applicable limitations statute would be subverted. In any event, the court notes that the applicable limitations period for the perjury statute is five years under 18 U.S.C. § 3282. In this case Coiro allegedly testified falsely before the grand jury in October and November of 1990—only two years ago. Because this matter has not even come close to the expiration of the limitations period, it would certainly be difficult to conclude that the sealing of the indictment for several months operated as "substantial [and] irreparable" prejudice on the memory of the defendant. Thus, because the government has established a legitimate objective for the sealing of this indictment and because Coiro has failed to show the extensive prejudice required by *Srulowitz*, Coiro's motion to dismiss the indictment on the basis of its sealing must be denied.

### 4. *Suppression of Electronic Evidence*

Finally, Coiro moves for an order to suppress "the fruits of illegal electronic surveillance." Defendant's Notice of Motion ¶ 4. Although Coiro does not address this motion through the affidavit of his attorney, he states:

The defendant joins in any motions made by the defendants in *United States v. Gotti*, CR–90–1051, relating to electronic surveillance or interception, which the

---

**2.** It should be noted that this indictment was unsealed in November of 1991—that is, before the beginning of the Gotti trial—in order to assist Judge McLaughlin in his resolution of

Coiro's pending motion under former Federal Rule of Criminal Procedure 35. Government's Memorandum of Law at 7, n. 2.

defendant recognizes have already been ruled upon by the Court.

*Id.* ¶ 5. Of course, the defendant is correct to note that this court has already determined the status of the electronic surveillance evidence that will be introduced against Coiro. See *United States v. Gotti,* 771 F.Supp. 535 (E.D.N.Y.1991). That decision is subject to the principle of stare decisis in this court; as such, the motion to suppress is denied.

### CONCLUSION

For the reasons set forth above, the defendant's motions to dismiss all or parts of the indictment and to suppress the electronic evidence are denied; the motion of the government for a protective order with respect to the disclosure of the defendant's grand jury testimony is granted. Finally, because the government concedes that it must ultimately disclose that testimony "well in advance of trial," it is unnecessary to consider the defendant's motion to compel that discovery.

SO ORDERED.